IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 1:17-cv-01542-RM-KMT

VILLA MAISON HOMEOWNERS ASSOCIATION, INC.,

Plaintiff,

v.

OWNERS INSURANCE COMPANY,

Defendant.

---

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF DEFENDANT'S MOTION TO DISMISS IN LIGHT OF NEW EVIDENCE NOT PREVIOUSLY CONSIDERED**

---

Plaintiff, Villa Maison, by and through its undersigned counsel, respectfully moves this Court to reconsider its Opinion and Order Granting Defendant's Motion to Dismiss [Docket No. 48] (the "Order"), and in support thereof states as follows:

### CERTIFICATE OF COMPLIANCE WITH D.C. COLO.L.CivR. 7.1A

Counsel for Plaintiff attempted to confer with defense counsel regarding this Motion. As of the date filing, defense counsel has not indicated whether or not she would object to this Motion. It is the undersigned's belief, however, that defense counsel would object to this Motion. It is the undersigned's belief, however, that defense counsel would object to this Motion. While counsel for Plaintiff has been unable to discuss the relief requested in this motion in detail with counsel for Defendant, counsel for Plaintiff has filed this motion to an effort to meet the deadlines required by Fed.R.Civ.P. 59(e).

## STANDARD OF REVIEW

1. Fed.R.Civ.P. 59(e) merely provides that "[a] motion to alter or amend a judgment must be filed no later than 10 days after the entry of judgment." However, it is well settled that "[t]he Federal Rules of Civil Procedure... allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) or a motion seeking relief from judgment pursuant to Fed.R.Civ.P. 60(b)." Ground Improvement Techniques v. Federal Insurance Co., 2009 WL 663052 (D. Colo. March 13, 2009) (citing Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). "Fed.R.Civ.P. 59(e) will govern when the motion for reconsideration is filed within ten days of the judgment and Fed.R.Civ.P. 60(b) will govern all other motions." Id.

2. A motion for amendment under Rule 59(e) "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. … It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id. (citing Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir.2000)) "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Id. This standard regarding "motion[s] to reconsider" has been applied to Fed.R.Civ.P. 59(e) motions by the 10th Circuit Court of Appeals. *Id*. (citing Schussler-Womak v. Chickasaw Tech Prod., 116 Fed. Appx. 950 (10th Cir. 2004).

3. Plaintiff filed its Complaint against Owners alleging breach of contract, bad faith breach of contract, and unreasonable denial and delay of covered insurance benefits pursuant to Colorado Revised Statute §§ 10-3-1115 and 10-3-116[Docket No. 1]. On October 23, 2017, Owners filed its Partial Motion to Dismiss Counts I and II of Plaintiff's Complaint for

unreasonably delay of insurance benefits pursuant to C.R.S. § 10-3-1115 and 10-3-1116 and common law bad faith [Docket No. 17]. On July 9, 2018, this Court issued an Order granting Owners Motion to Dismiss Counts I and II of Plaintiff's Complaint [Docket No. 48].

## ARGUMENT

4. Plaintiff asserts that significant new facts previously not available to or considered by the Court have become known to Plaintiff since the time it prepared and filed a response to Defendant's Motion to Dismiss. In light of new facts not previously considered by the Court, and to prevent a manifest injustice, Plaintiff respectfully moves the Court to alter the judgment granting the Motion to Dismiss, and instead deny the Motion to Dismiss pursuant to Fed.R.Civ.P. 59(e).

5. Plaintiff has filed a motion for leave to file and serve an amended complaint simultaneously with the Motion for Reconsideration. The Amended Complaint alleges additional facts that were not discovered until after time to append its response to Defendant's Motion to Dismiss had expired. Specifically, the depositions of Owners retained independent adjuster Ron Todd on March 5, 2018, Owners Claims Adjuster Geoffrey Thomas Page on March 16, 2018, and Owners retained engineer Stephen Boyd on July 12, 2018, led to the discovery of new facts not previously in the record.

6. Plaintiff has learned that Owners retained an independent adjuster, Ron Todd of Ascent Claims Services, to inspect Plaintiff's claim for damages to its sunroom on June 15, 2015. Plaintiff has learned that Mr. Todd performed an inspection of Plaintiff's property on October 26, 2015, and generated an inspection report relating to his inspection of the Villa Maison property, which was never previously discussed with, or disclosed to Plaintiff. *See* Todd Report attached hereto as **Exhibit "1."** Plaintiff has further learned that during his October 26, 2015, inspection of the property, Mr. Todd documented photographic evidence of hail damage to the Villa Maison

property, noting hail damage on a satellite dish, vinyl gutters, and soft metals. *See* Todd Photographs attached hereto as **Exhibit "2."** During his deposition, Mr. Todd testified that he notified Owners of the hail damage observed during his investigation. Despite identifying hail damage to the Villa Maison property during his October 2015 inspection, Mr. Todd testified that he did not provide any of his photographs, nor any of his findings, to Villa Maison.

> Q. So let me break that down. Is it your testimony that you did not identify any hail damages solely to the roofing systems during your 2015 inspections, or to any portion of the building?
> A. In 2015, I noted hail spattering to a satellite dish. Not on my original inspection, on a reinspection. And then also to some soft metal, a very thin cap on a sunroom - - on a portion of that sunroom, and I noted that on my second inspection, as well, not on my first.

*See* **Exhibit "3,"** Todd Dep. 16:19 – 17:3.

> Q. And during your inspections in 2015 - - not your first inspection that was before June 24, 2015, but your second inspection after June 24, 2015, did you identify any hail damage to the property?
> A. I noted hail damage to a skylight that we were looking at for one of the unit owners - - not a skylight, a sunroom for one of the unit owners.
> Q. And did you notify the unit owners that you identified hail damage on the roof?
> A. I did not. I did not see hail damage on the roof.
> Q. Did you notify the unit owner that you identified hail damage to their skylight?
> A. I don't recall specifically. I mean, that's - - that sunroom was already being written for replacement.
> Q. Did you notify Owners Insurance Company that you identified hail damage to the building?
> A. I notified them of the hail damage that I noted to the - - the center strips; they were thin, soft metal strips on that sunroom. And then I documented and included in my file the spattering on the satellite dish that I noted.
> Q. And as a result of the spattering and the hail damage you noted -- you identified to the sunroom, did you complete any further investigation or inspection to the windows or any other elements of the buildings to determine whether or not there was hail damage to those areas, as well?
> A. You know what, I walked the property and I walked the roof, because that first claim was filed for interior leaking from heavy rains. So part of my job is to find out if there were any openings caused by -- caused by hail. When I noted evidence that a hail event had occurred during my October 2015 inspection and I documented the -- the hail damage to that center strip and

> the -- and the spattering on the satellite dish, I still walked the roof to -- to get an idea of whether or not there was hail damage present on that -- on that roof.
> Q. And did you - - and did you complete any test squares?
> A. I did not.
> Q. All right. Did you make any claim notes or documentation that you did - - that you actually inspected the roofs for potential hail damage?
> A. Claim notes, not that I recall.
> Q. Did you - -
> A. I have photographs, overview photographs of the roof.
> Q. Okay. Did you issue any correspondence in any form to the insured discussing the potential for hail damage to their buildings?
> A. To the insured, no.
> Q. Did you provide your photographs that documented potential hail damage to certain areas of the buildings to the insured?
> A. I did not.

See **Exhibit "3,"** Todd Dep. 67:6 – 69:14.

7. This new evidence demonstrates that Owners had knowledge of hail damage to Plaintiff's property in October 2015, yet withheld that information from its insured, and had notice of a potential hail claim related to the June 24, 2015, date of loss. Unfortunately, Mr. Todd's testimony was not available when Plaintiff's Complaint and Plaintiff's Response to Defendant's Motion to Dismiss were presented to this Court. As such neither this Court, nor Plaintiff had the benefit to contemplate the evidence provided through Mr. Todd's testimony which could lead to a finding of unreasonable delay or denial of an insurance claim in violation of C.R.S. §§ 10-3-1115 and 10-3-1116 or a finding of a breach of Owners duty of good faith and fair dealing.

8. Moreover, neither the Court, nor Plaintiff, had the benefit of the deposition testimony of Owners' assigned claims adjuster, Geoffrey Thomas Page. During his March 16, 2018, deposition, Mr. Page testified that Owners had retained a catastrophe company to perform site inspections of several properties for damages resulting from the hail storm that occurred on June 24, 2015. Plaintiff learned that it's likely more than one hundred claims were reported in the Denver area due to the severe hail storm.

| | |
|---|---|
| Q. | All right. So you stated that you reviewed Auto-Owners - - other Auto-Owners claims in the area or vicinity of the Villa Maison property; is that correct?<br>Ms. Wheeler: Object. Form. |
| A. | Yeah. So specifically I just kind of looked to see what other storms were reported on June 24, 2015. |
| Q. | And what did you find? |
| A. | That there were several other claims reported on that date of loss. |
| Q. | Was that a printout of some sort that you pulled, or did you just generally look at other file materials? |
| A. | Well, it's not really a printout. I was able to see that there was - - we hadn't put a catastrophe team together when the storm first happened, so I was able to see that there was a catastrophe number associated with that date of loss, and we actually had a catastrophe company come out and inspect several of our property claims for us after that date of loss. |
| Q. | And what information does that provide to you that Auto-Owners assigned a catastrophe team to assist with claims as a result of June 24, 2015? |
| A. | Well, essentially there was a great deal of claims that came in after that date of loss, so we needed the assistance to make sure all of these insureds got their properties inspected and if there were covered damages, that they were paid. |
| Q. | Do you have an idea of the number of claims?<br>Ms. Wheeler: Objection. Form. |
| A. | I don't have a - - it would be a strict guess. |
| Q. | Would it be more than 100? |
| A. | In all likelihood, yes. |
| Q. | And did you do anything to determine whether or not any of these claims that were the result of June 24, 2015, were in close proximity to the property of Villa Maison Homeowners Association? |
| A. | I don't know if I did specific proximity. I don't know if I went that detailed into it. I was able to see that, yeah, you know, in the Denver area June 24 had been reported. Basically the Denver area is about as far as I went. I kind of left it at that when I was first investigating. |

See **Exhibit "4,"** Page Dep. 41:15 – 43:15.

9. Not having the benefit of Mr. Todd's photographic evidence documenting hail damage to its property in October 2015, Villa Maison reported hail damage to its property when it was learned in March 2017. Defendant filed its Motion to Dismiss on October 23, 2017, and Plaintiff filed its response on October 31, 2017. During Mr. Page's March 16, 2018, deposition, Plaintiff learned that Owners retained an engineer, Stephen Boyd of Rimkus Consulting Group

("Rimkus"), to investigate Plaintiff's claim for hail damages related to the hail storm that occurred on June 24, 2015. Rimkus generated a report related to its inspection, which has been attached hereto as **Exhibit "5."** Unfortunately, Mr. Page's testimony was not available when Plaintiff's Complaint and Plaintiff's Response to Defendant's Motion to Dismiss were presented to this Court. As such neither this Court, nor Plaintiff had the benefit to contemplate the evidence provided through Mr. Page's testimony which could lead to a finding of unreasonable delay or denial of an insurance claim in violation of C.R.S. §§ 10-3-1115 and 10-3-1116 or a finding of a breach of Owners duty of good faith and fair dealing.

10. While Mr. Boyd's inspection report, attached hereto as **Exhibit "5,"** is dated September 11, 2017, it was not provided to Plaintiff until December 18, 2017, over one month after Defendant filed its Motion to Dismiss. Through the inspection report, Plaintiff has learned that Mr. Boyd concluded that while the asphalt shingles along the ridges and hipped ridge of both buildings were damaged by impacts by hail stones, the remaining asphalt shingles at both buildings were damaged by weather, erosion, footfall, and mechanical impacts. Mr. Boyd further concluded that the shingles were not damaged by impacts from hailstones. Mr. Boyd's report also indicates, on page ten, that a complete visual examination is needed to determine the presence of hailstone damage to a roof covering and other building finish materials.

11. As Mr. Boyd's report was not available yet when Plaintiff had to make its response to Defendant's Motion to Dismiss, Plaintiff did not hold, and was not able to provide this Court, the benefit of the information his report could deliver in support of finding unreasonable delay or denial of its insurance claim in violation of C.R.S. §§ 10-3-1115 and 10-3-1116 or a finding of a breach of Owners duty of good faith and fair dealing owed to Plaintiff.

12. While Plaintiff took the deposition of Stephen Boyd on July 12, 2018, it is not currently in the possession of the deposition transcript. However, Mr. Boyd testified during his deposition that while he concluded the shingles on the west building roofing system were not damaged by impacts from hailstones, he never climbed onto the roofing system of the west building, only viewing it from his ladder. Obviously, Owners reliance upon Mr. Boyd's inadequate investigation is evidence that should have been considered by this Court during its review of Defendant's Motion to Dismiss.

13. Plaintiff also learned during the March 2018 deposition of Owners claims adjuster, Geoffrey Thomas Page, that Owners did not provide Mr. Boyd with the photographs taken by Mr. Todd during his October 2015 inspection of the property illustrating hail damage and spattering.

> Q. Did you provide Rimkus Consulting Group with Ron Todd's 2015 photographs?
> Ms. Wheeler: Objection. Form.
> A. No.

*See* **Exhibit "4,"** Page Dep. 47:15-18.

14. More concerning, Mr. Page's deposition led to the discovery of new evidence that Owners based its decision to deny Plaintiff's claim on the deficient inspection and report provided to it by Mr. Boyd:

> Q. My understanding is that you based your coverage position on this Rimkus report. Is there anything else you based your coverage decision on?
> A. Yeah. And the reason I ultimately decided to issue payment is the Rimkus report and it would be best to issue that payment under the reservation of rights.

*See* **Exhibit "4,"** Page Dep. 64:16-25.

> Q. Here is all I want to know. Give me a list of what you relied on to determine what would be paid for and what would not be paid on.
> A. So the payment that was issued, that was based solely off the Rimkus report, which the Rimkus report was provided to Mr. Todd and to prepare an

|   |   |
|---|---|
|   | estimate based off his finding. We have our other concerns, but that payment, that's based off the Rimkus report. |
| Q. | Yeah. So now I know what the payment was based off of. Now let's talk about the nonpayment. |
| A. | Okay. |
| Q. | What did you base your decision to make a nonpayment on?<br>Ms. Wheeler: Object. Form. |
| A. | Well, the nonpayment was based off of all the items in the Rimkus report, which he said was wear and tear deterioration. |

*See* **Exhibit "4,"** Page Dep. 69:20 – 70:15.

15. During the deposition of Owners retained engineer, Stephen Boyd, it was shockingly discovered and confirmed Mr. Boyd never walked any of the slopes of the west building's roofing system and instead relied on visual inspection from his ladder to reach his conclusion there was no more hail damage to the roofing systems. In contrast, Plaintiff's retained engineer walked every slope of the roofing system covering the property, confirming hail damage. Clearly, Mr. Page's and Owners' reliance on the Rimkus engineering report was misplaced.

16. In light of these new facts not previously considered by the Court and to prevent a manifest injustice, Plaintiff respectfully moves the Court to alter the judgment granting the Motion to Dismiss, and instead deny the Motion to Dismiss.

**WHEREFORE** Plaintiff, Villa Maison Homeowners Association, Inc., respectfully requests that, for the reason outlined above, the Court reconsider its prior order granting Defendant's Motion to Dismiss Claims Two and Three of Plaintiff's Complaint with Prejudice, and instead deny Defendant's Motion to Dismiss.

Respectfully submitted this 19th day of July, 2018.

> By: /s/ Jonathan Bukowski
> Larry E. Bache, Jr. Esq.
> Jonathan E. Bukowski, Esq.
> Timothy G. Burchard, II, Esq.
> MERLIN LAW GROUP, P.A.
> 1001 17th Street, Suite 1150

Denver, CO 80202
Telephone: 720.665.9680
Facsimile: 720.665.9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2018, I electronically filed the foregoing PLAINTIFF'S MOTION FOR RECONSIDERATION OF DEFENDANT'S MOTION TO DISMISS IN LIGHT OF NEW EVIDENCE NOT PREVIOUSLY CONSIDERED with the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address:

Karen H. Wheeler
Brian J. Waters
Jami A. Maul
Wheeler Waters, P.C.
5994 S. Holly Street, Suite 238
Greenwood Village, Colorado 80111
Telephone: 303-221-4787
E-Mail: karen@wheelerwaters.com
E-Mail: brian@wheelerwaters.com
E-Mail: jami@wheelerwaters.com
*Attorneys for Defendant*

          */s/ Jonathan E. Bukowski*
          Jonathan E. Bukowski, Esq.